Dorothy W. ROSS *v.* ARKANSAS
COMMUNITIES, INC. and WESTINGHOUSE
CREDIT CORPORATION

75-121                                    529 S.W. 2d 876

Opinion delivered December 1, 1975

*Wright, Lindsey & Jennings,* for appellant.

*W. P. Hamilton,* for appellees.

ELSIJANE T. ROY, Justice. Appellee Arkansas Communities, Inc. (ACI) is a real estate development company owning and developing property on Lake Catherine in Hot Spring and Garland Counties. The subdivision Diamondhead was incorporated in February 1969, and contains about 6,000 acres of land.

In April 1970, ACI entered into an agreement with Westinghouse Credit Corporation (Westinghouse) to afford financing for purchasers of Diamondhead lots. From April 1, 1970, to February 1973, approximately 1,049 sales were made and from these sales installment contracts were sold to

Westinghouse, others were sold to Southern Credit Corporation and the balance of approximately 230 contracts were retained by ACI.

The president of ACI testified that appellant purchased two lots on installment sales contracts on June 14, 1970. The contracts called for down payments of $450 and $1,500, respectively. The down payments were never paid, and after 27 months her contract was canceled for nonpayment.

Appellant then brought this action alleging her contracts were usurious and that improper late charges were made. She also alleged common questions of law and fact exist and sought to represent all purchasers of lots who signed retail installment contracts with ACI. For relief appellant demanded that all installment contracts purchased by Westinghouse be canceled and set aside and the lands described in such contracts be conveyed free and clear to all purchasers.

Her complaint also seeks as a class action recovery for violation of the Truth in Lending Act, for illegal repossession of lots and for unjust enrichment.

The chancellor indicated approximately 833[1] separate installment contracts would be involved in this case, and he ruled it could not proceed as a class action.

Appellant appeals to this Court for a reversal of that ruling or alternatively requests a writ of certiorari or a writ of mandamus directing the chancellor to permit the case to proceed as a class action.

Appellant's first contention is that the order of dismissal prohibiting the suit from proceeding as a class action is a final and appealable order. We agree with appellant. Although Mrs. Ross' individual suit was not ended by the chancellor's order, the action on behalf of the class members was ended. Thus, a distinct and severable branch of the case has been finally determined. *Parker* v. *Murry*, 221 Ark. 554, 254 S.W. 2d 468 (1953), and *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974).

---

[1]Testimony in the record indicated the number to be 812.

Appellant contends her action is properly brought as a class action under Ark. Stat. Ann. § 27-809, which provides as follows:

> Where the question is one of a common or general interest of many persons, or where the parties are numerous, and it is impracticable to bring all before the court within a reasonable time, one or more may sue or defend for the benefit of all.

On March 17, 1970, the financial vice president of ACI wrote to Westinghouse and proposed to sell to Westinghouse "all notes receivable generated from lot sales" at a discount to yield Westinghouse "a reasonable return (14% per annum simple interest, initially)," and Westinghouse accepted the proposal.

Although the retail installment contract executed by each purchaser contains an interest rate of 10% per annum, appellant contends she has made a prima facie case of usury because of the agreement between ACI and Westinghouse at 14% per annum as indicated.

In her brief and in oral argument appellant placed great reliance upon the case of *Vasquez* v. *Superior Court of San Joaquin County*, 94 Cal. Rptr. 796, 484 P. 2d 964 (1971). In *Vasquez* 37 plaintiffs had each executed two separate contracts, one for the purchase of a food freezer and the second for a frozen food pack allotment. The plaintiffs sued for rescission of the contracts for fraudulent misrepresentation on behalf of themselves and others similarly situated. The California Supreme Court granted a writ of mandamus to compel the trial of the case as a class action.

We find no analogy between the sale of a freezer and the sale of a lot with its many variables. There were established prices on the food freezers and frozen food pack allotments and no established prices on the lots in Diamondhead subdivision. Most sales of the lots were at prices considerably below the suggested list price. As the chancellor pointed out in his opinion:

> Here we are dealing with real property, it's not like a

refrigerator or automobile where the price can be established by competition or in the general course of trade. Real property is an item which can be bought or sold for any price obtainable and there's no established price upon it.

California has extended the scope of its class action statute more than the courts have in Arkansas and more than several other jurisdictions which will be cited herein.

Arkansas cases construing our class action statute seem to follow the more limited application. The Arkansas statute is a codification of the equitable doctrine of virtual representation. *Lightle* v. *Kirby*, 194 Ark. 535, 108 S.W. 2d 896 (1937); *Baskins* v. *United Mine Workers*, 150 Ark. 398, 234 S.W. 464 (1921).

To maintain a class action there must be an ascertainable class and a community of interests among the members of that class.

The interest of appellant is the right to have the validity of her individual contract determined. She has no interest in the validity or invalidity of the contracts of any other purchaser. Similarly no other purchaser has any interest in her contract. Their rights being several there cannot be a class action as there is not a common bond or common claim and each will stand or fall on its own individual merit.

The theory underlying a proceeding as a class action is that of virtual representation. Under such a proceeding all members of the class are bound by the result of a litigation and any attempt by such members to bring claims subsequently would be barred by res judicata. We considered this proposition in the case of *Connor* v. *Thornton*, 207 Ark. 1113, 184 S.W. 2d 589 (1945). An action had been brought by Ted Wynia and other homeowners against defendants D. P. and R. E. Thornton claiming damages caused by soot and other substances arising out of the operation of their sawmill. A jury verdict was rendered for defendants and there was no appeal. Subsequently, Connor brought an action against the Thorntons for damages arising from the operation of this

same sawmill. At the trial level even though the case was not brought as a class action it was held that the previous case bound the instant plaintiffs on the theory of virtual representation and thus the matter was res judicata. On appeal the matter was reversed with directions to proceed to trial. This Court commented:

> In the very nature of things, there would have been difficulty in prosecuting it as such, because values of the several properties were different, distances from homes to the mill varied, and damage would probably be in ratio to proximity of the property to the mill. . . .

We pointed out that although the cause of damage might have been common, nevertheless the causes of action would all be separate and independent with each cause being determined on its own separate individual facts. Ark. Stat. Ann. § 27-801 provides that every action must be prosecuted in the name of the real party in interest. The factual situation in this case does not warrant a deviation from this requirement.

Class actions are in derogation of the general rule of procedure and in addition to commonality of questions of law and fact it should be shown that the procedure is superior to other available methods for the fair and efficient adjudication of the controversy.

Moreover this Court must be realistic in its appraisal of the situation and we cannot ignore the serious practical problems which would arise if we allowed the case to proceed as a class action. Considerable expense would be involved. How could the limited staff of the chancery court take care of the necessary proceedings, answer the inquiries for further information on the 833 transactions and keep the members of the class advised as to the status of the case thereafter? It is apparent a maze of procedural difficulties would be encountered. Although practical aspects of a case are not controlling on this Court's decision they are among the factors to be considered.

In the case of *Colbert* v. *Coney Island, Inc.,* 97 Ohio App. 311, 121 N.E. 2d 911 (1954), three plaintiffs attempted to br-

ing a class action alleging that they had been denied admission to an amusement park. In analyzing the statutory provisions, the court said:

> The three plaintiffs herein obviously have a sympathetic interest in each other's cause of action, but neither has any legal interest in the relief sought by each other. A *common and important question of law is presented* by each of the plaintiffs in which they have a *community of interest,* but their respective *causes of action are separate and distinct.* * * * Neither of the plaintiffs have any interest in the "subject of the action" of the other. (Emphasis supplied)

The rationale for disallowing a class action is well expressed in *Fisher* v. *Health Insurance Plan of Gr. New York,* 67 N.Y. Misc. 2d 674, 324 N.Y.S. 2d 732 (1971).

> Separate wrongs to separate persons, though committed by similar means and pursuant to a single plan, do not alone create a common or general interest in those wronged. *(Society Milion Athena, Inc.* v. *National Bank of Greece,* 281 N.Y. 282, 22 N.E. 2d 374; *Brenner* v. *Title Guarantee & Trust Co.,* 276 N.Y. 230, 11 N.E. 2d 890). Class actions may not be maintained when the asserted wrongs are individual to the different persons and each aggrieved person may determine for himself the remedy he will seek and may be subject to a defense not available to the others. *(Gaynor* v. *Rockefeller,* 15 N.W. 2d 120, 256 N.Y.S. 2d 584, 204 N.E. 2d 627).

The case at bar involves separate transactions, separate prepurchase negotiations with relatively different degrees of success in each, resulting in different prices on different lots. Each purchaser allegedly aggrieved may determine for himself the remedy he will seek and the defenses which he may or may not interpose, including usury.

Class action was denied in the case of *Graybeal* v. *American Savings & Loan Association,* 59 R.F.D. 7 (1973). There certain borrowers brought a class action on behalf of all persons who borrowed on their homes from defendant lending insitutions.

Plaintiffs' alleged breach of contract, unjust enrichment; usury, violations of the Consumer Credit Protection Act and violations of the Sherman Act.

The court held:

Plaintiffs' *breach of contract and unjust enrichment* causes of action clearly involve questions of law or fact which will necessarily require *answers based on each individual loan contract* . . . . (Emphasis supplied)

\* \* \* \*

Again, the individual questions predominate over questions common to the proposed class. Whether the interest charged on a particular loan contract was usurious must be determined borrower by borrower, contract by contract.

Appellant grounds her own and the class action charges of usury on the caveat issued by this Court in the case of *Hare* v. *General Contract Purchase Corporation,* 220 Ark. 601, 249 S.W. 2d 973 (1952). By commenting on the application of the *Hare* case we do not imply that we are in any way determining the merits of the usury question. However, to determine if there are different factual questions to be passed on by the chancellor as to each transaction it is necessary to consider *Hare.*

Commonality is the key word in determining the propriety of a class action. However, the commonality required in a class action includes facts as well as law, and here we do not have uniformity of facts in the different sales.

In *Hare* we said:

(2) If the seller, whether he has quoted two prices to the purchaser or not, subsequently transfers the title documents to an individual or company which is engaged in the business or purchasing such documents, at a price which permits the transferee to obtain more than a return of 10% of its investment, *then a question of fact arises*

*as to whether the seller increased his case price with the reasonable assurance that he could so discount the paper to such individual or finance company. If that reasonable assurance existed, then the transaction is in substance a loan, and may be attacked for usury.* (Emphasis supplied)

The phrase "then a question of fact arises as to whether the seller increased his cash price" is crucial in determining what appellant must establish for her individual claim and on behalf of each other purchaser of the lots whom she seeks to represent. One cannot be charged with having increased a price without showing that there was a price established. This is the first requirment of the *Hare* caveat. At the time appellant purchased her lots there had been no price established as to the lots.

Some of the lots had suggested prices which were supplied to the salesmen. Nevertheless actual sales were made at prices determined by bargaining back and forth. The negotiations were separate as to each individual customer. Once the price was agreed upon the customer could purchase the lot at that price for cash or by paying that price in installments evidenced by note or contract bearing 10% simple interest per annum. Moreover, very few sales, whether cash or financed, were sold at the suggested list price. Without determining facts in each individual transaction the chancellor could not ascertain if appellee increased such price to cover a discount bringing the transaction within the *Hare* caveat. It must also be established in each separate transaction that each salesman involved had not only increased the price to cover the discount but had reasonable assurance that a given finance company would in fact purchase the note or contract. Westinghouse had 10 days after receipt of a contract to accept or reject it. Whether the interest charged was usurious would necessarily have to be decided by the chancellor on a contract by contract basis.

In *Lindsey* v. *Mid-State Homes,* 239 Ark. 257, 388 S.W. 2d 551 (1965), in discussing the facts we said:

Jim Walters sold houses to appellants for a certain sum; a small amount was paid on the purchase price, the

balance to be paid in monthly installments; a little less than 10% per annum was charged as interest on the unpaid balance. *Jim Walters sold the notes for the unpaid balance to Mid-State Homes, Inc., its wholly owned subsidiary, at a discount of 20%.* Appellants contend that the transactions amounted to usury under the decision in *Hare* v. *General Contract Purchase Corporation*, 220 Ark. 601, 249 S.W. 2d 973. (Emphasis supplied)

In *Lindsey* we also stated:

Under the decision in the *Hare* case, a situation of this kind gives rise to the question of whether the transaction is usurious. The chancellor held that it was not usurious and we cannot say the chancellor's finding of fact is against the preponderance of the evidence.

Although very little of appellant's brief is devoted to the Truth in Lending aspect of the case, having found that a class action would not be proper under the usury allegations of the complaint, we find many more variables in this contention and it would be even less appropriate for a class action. ACI and Westinghouse are required by the Truth in Lending Act to disclose to prospective customers the method of computing the amount of any default, delinquency or similar charges payable in event of late payments. It is quite evident there is even less "commonality" in these claims.

In *Ratner* v. *Chemical Bank New York Trust Company*, 329 F. Supp. 270 (S.D. N.Y. 1972), a Truth in Lending case, the court denied a credit card holder bringing the action for himself and others the right to proceed as a class action. Judge Marvin Frankel pointed out in *Ratner* the incentive of class action benefits is unnecessary in view of the Act's provisions for a $100 minimum recovery, payment of costs and a reasonable fee for counsel. Furthermore, he stated that the allowance of this as a class action was essentially inconsistent with the specific remedy supplied by Congress.

For the foregoing reasons we affirm the chancellor's

holding that this case is not a proper class action.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur because the issues were not confined to the question whether all the contracts were rendered usurious by appellee's contract with Westinghouse Credit Corporation, which required appellee to submit all time purchase contracts to be submitted to the credit corporation. I do not feel that it is necessary to go any further in this case.