Jim C. PLEDGER, Tim Leathers, et al. *v.* Stanley BOSNICK, et al.

90-39                                    811 S.W.2d 286

Supreme Court of Arkansas
Opinion delivered June 10, 1991

*Winston Bryant,* Att'y Gen., by: *Lynley Arnett,* Asst. Att'y Gen., for appellant Jimmie Lou Fisher.

*Wm. E. Keadle,* Revenue Legal Counsel, for appellants Jim C. Pledger and Tim Leathers.

*Hilburn, Calhoun, Harper, Pruniski & Calhoun, Ltd.,* by: *Carrold E. Ray,* for appellee.

ALLEN W. BIRD II, Special Chief Justice. Appellants, Jim C. Pledger, Director of the Arkansas Department of Finance and Administration, and Tim Leathers, Commissioner of Revenues, were charged with the enforcement of the Arkansas Income Tax. Appellees consist of a certified class of Arkansas residents who have retired from employment with various United States civil service agencies, with the various branches of the United States Armed Services, and with other states' agencies and political subdivisions.

Appellees filed suit in the Chancery Court of Pulaski County, Arkansas, against appellants Pledger and Leathers in their respective capacities, along with Jimmie Lou Fisher, in her capacity as Treasurer of the State of Arkansas. Appellees contended that the provisions of Ark. Code Ann. § 26-51-307 (1987), which provided a full exemption from Arkansas Income Tax for the retirement income received by retirees from the Arkansas Public Employees, Teachers, State Highway Police, and State Highway Employees Retirement Systems, while allowing an exemption for only the first $6,000 of appellees' and all other retirees' retirement income, was in violation of the principles of intergovernmental tax immunity by favoring retired employees of the State of Arkansas and local government employees over retired federal employees and retired employees of other states and political subdivisions thereof. The Chancellor, citing the United States Supreme Court case of *Davis* v. *Michigan Dep't of Treasury,* 489 U.S. 803 (1989), agreed with appellees' contention, and on November 1, 1989, ordered the appellants to refund to all members of the class all such income

tax collected on their retirement income since 1985 and awarded appellees' counsel an attorney's fee from a portion of this refund. From this decision and decree entered by the Chancellor appellants have perfected this appeal. We affirm the lower court.

Initially we must determine whether the appeal herein is final for the purposes of Rule 2 of the Arkansas Rules of Appellate Procedure. Neither the appellants nor the appellees have raised this issue; however, we addressed the issue during oral argument of the case. Even though the parties to an appeal do not raise the issue of the appealability of an order, it is the duty of this court to do so, as a determination that the order appealed from is not final would deprive this court of jurisdiction to hear the appeal. *Associates Fin. Serv. Co. of Okla., Inc. v. Crawford County Memorial Hosp., Inc.*, 297 Ark. 14, 759 S.W.2d 210 (1988). The existence of a final order is a jurisdictional requirement for bringing an appeal, which this court is obliged to raise even though the parties do not. *3-W Lumber Co. v. Housing Auth.*, 287 Ark. 70, 696 S.W.2d 725 (1985); *John Cheeseman Trucking Inc. v. Dougan*, 305 Ark. 49, 805 S.W.2d 69 (1991).

The Arkansas Rules of Appellate Procedure state at Rule 2:

(a) An appeal may be taken from a circuit, chancery, or probate court to the Arkansas Supreme Court from:

1. A final judgment or decree entered by the trial court; . . .

9. An order certifying a case as a class action in accordance with ARCP Rule 23. . . .

This action was filed as a class action, and the complaint and its amendments specifically prayed that a class be certified pursuant to Arkansas Rule of Civil Procedure 23. The Chancellor entered his order on August 22, 1989, finding that class certification was proper under Rule 23.

In addition, the complaint asked the lower court to: (i) find that the Arkansas Income Tax unconstitutionally discriminates against retired federal employees and retired employees of other states who receive or have received retirement benefits in excess of $6,000; (ii) enjoin the defendants from appropriating and

expending any of the funds collected pursuant to a levy of the illegal income taxes and account for the amounts so collected to date; (iii) refund to the class the illegally collected income taxes, together with interest; and (iv) award reasonable attorney's fees and reimbursement of costs under Ark. Code Ann. § 26-35-902 (1987).

On November 1, 1990, the Chancellor entered his order and (i) found that the Arkansas income tax laws violated the principles of intergovernmental tax immunity and 4 U.S.C. § 111; (ii) enjoined the defendants from collecting the income tax found to be unconstitutional; (iii) ordered an accounting for and refund of the income taxes to all taxpayers represented by the class to the extent such taxes were collected in excess of the lawful taxes as determined by the court; and (iv) stated an intention to allow a reasonable part of the taxes to be refunded as attorney's fees.

The class certification order entered on August 22, 1989, was an appealable order pursuant to Arkansas Rule of Appellate Procedure 2(a)(9). *International Union of Elec., Radio and Mach. Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988). Although the appellees have not raised the issue of timeliness of appeal of the class certification issue, timeliness of the appeal is also jurisdictional for this court. *LaRue v. LaRue*, 268 Ark. 86, 593 S.W.2d 185 (1980). However, whether the appellants failed to appeal that order in a timely manner is moot because we affirm for the reasons set forth below. The remaining issue on appealability is whether the balance of the appeal is properly before this court as a final order.

The test of finality and appealability of an order is whether the order puts the court's directive into execution, ending the litigation or a separable branch of it. *Mueller v. Killam*, 295 Ark. 270, 748 S.W.2d 141 (1988). We have often held that in order for an order to be appealable it must be such a final determination of the issues as may be enforced by some appropriate manner. *Estate of Hastings v. Planters and Stockmen Bank*, 296 Ark. 409, 757 S.W.2d 546 (1988); *Cigna Ins. Co. v. Brisson*, 294 Ark. 504, 744 S.W.2d 716 (1988). The members of the class, in the court below, asked for relief common to the class, including a declaration that certain provisions of the income tax laws of the

state are unconstitutional, an injunction against using the funds illegally collected, a refund to the class, and attorney's fees for the attorney. The order of the Chancellor granted the prayer in favor of the members of the class on all of those issues. There appears to be no question that the Chancellor's rulings are final as to those issues which are common to the class. The only real issue as to appealability before this Court is whether the final rulings on those issues are rendered nonappealable when coupled with the ruling awarding attorney's fees in an unliquidated amount, and a requirement that the appellants submit a plan for providing notice to the class of their rights to a refund and establishing the procedures for such refunds.

We view the action left to be taken after the entry of the order appealed from, relating to notice to the members of the class (1) to be remote and collateral to the main issues before the court, (2) to require an examination of factors beyond the issues needed to be decided with the merits of the original complaint, and (3) to be a largely ministerial task similar to assessing the traditional items of cost. Collateral action, such as this, is action that does not make any direct step toward final disposition of the merits of a case, will not be merged in the final judgment, is not an ingredient of the cause of action, and does not require consideration with the main cause of action. Such collateral and ministerial orders need not be final for purposes of Arkansas Rule of Civil Procedure 54 nor Arkansas Rule of Appellate Procedure 2. In *Farm Bureau Mutual Ins. Co.* v. *Southall*, 281 Ark. 141, 661 S.W.2d 383 (1983) we were faced with a property insurer who was faced with a second action based upon a policy. The insurer had confessed judgment and tendered the policy limits, plus penalty and interest into the registry of the court in an action in Hot Spring County. The matter of attorney's fees was still pending in the Hot Spring County action when the insured filed a second action in Pulaski County. We said in that action, "The only part of the Hot Spring County case still pending is that of determining the amount of the attorney's fees to be assessed against [the insurer]. For· all practical purposes the original action is not pending." 281 Ark. at 145, 662 S.W.2d at 386.

The same is true in the case at bar. The order appealed from in this matter otherwise terminates the action as it was requested by the moving parties in the complaint on the issue of the

constitutionality of the tax, the injunction and the refund. We view the matter of the details of notice and attorney's fees to be primarily collateral and ministerial and in furtherance of the enforcement of the court's decision. It is not required under our interpretation of Rule 2 that such collateral ministerial matters be final. The order appealed from granted all the relief prayed for in the complaint and was thus final. *See Terket* v. *Lund*, 623 F.2d 29 (7th Cir. 1980).

Upon questioning during oral argument, counsel for the appellees was asked whether he was seeking additional attorney's fees for which additional orders of the chancery court might be necessary. Counsel indicated that he reserved his rights to seek fees pursuant to 42 U.S.C. §§ 1986 and 1988. Does such a stated intention prevent the order from which appeal is taken from being final for the purposes of Rule 2? We think not. Such actions under 42 U.S.C. §§ 1986 and 1988 may in some cases even be by separate action. *See Johnson* v. *Snyder*, 639 F.2d 316 (6th Cir. 1981). Such a claim for attorney's fees raises a collateral and independent claim for determination by the lower court, and thus a judgment on the merits on the other issues raised in the complaint is final as to the relief prayed of that court. *See Obin* v. *Dist. No. 9 of the Int'l Ass'n of Machinists and Aerospace Workers*, 651 F.2d 574 (8th Cir. 1981). It would be fruitless, and, under our interpretation of the rule, we are not required to anticipate all of the relief the parties may ask in the future when making determinations as to finality under Rule 2.

▪ We thus hold that the lower court's order on the issues of class certification, constitutionality of the tax, the injunction, the refund and the right to attorney's fees to be final for purposes of appeal.

## DID THE CHANCELLOR ERR IN INCLUDING WITH THE CERTIFIED CLASS MILITARY RETIREES AND RETIREES FROM OTHER STATES' GOVERNMENTAL AGENCIES?

For its first ground for reversal, the appellants argue that the Chancellor erred in including within the certified class military retirees and retirees from other states' governmental agencies. In order to understand the basis for the argument by the appellees, we must consider the United States Supreme Court case upon

which the appellants' case is based, *Davis* v. *Michigan Dept. of Treasury*.

Paul S. Davis is a former federal employee. He brought suit in Michigan seeking a refund of state taxes paid on his federal retirement benefits. He argued that the constitutional Doctrine of Intergovernmental Tax Immunity as codified at 4 U.S.C. § 111 prohibited discrimination against him, when compared with an employee retired from the employment of the State of Michigan. Section 111 allows states to tax pay or compensation for personal services as a federal officer or employee if the taxation does not discriminate against the federal employee because of the source of the pay or compensation. Michigan claimed that its laws did not violate section 111 because Mr. Davis was an "annuitant" rather than an employee and therefore section 111 did not protect him from discrimination. All of the courts in Michigan agreed with the state. *Davis* v. *Dep't of Treasury*, 160 Mich. App. 98, 408 N.W.2d 433 (1987).

Mr. Davis asked the Supreme Court to review the matter. The Supreme Court found that section 111 did protect Mr. Davis because section 111 protected current federal employees as well as retirees. The Supreme Court reasoned that retirement pay, though not actually disbursed during the time an individual is working, is based and computed upon the individual's salary and years of service, and was thus deferred compensation for past service. The Supreme Court reviewed the constitutional Doctrine of Intergovernmental Tax Immunity which bars those taxes that discriminate against a sovereign or those with whom it deals. In *Davis* v. *Michigan Department of Treasury*, the United States Supreme Court pointed out that section 111 constitutes an affirmative statutory grant of immunity from discriminatory state taxation equal to the constitutional Doctrine of Intergovernmental Tax Immunity, which applies between the states and the federal government and among the states themselves. Thus, if we find in this case that the Arkansas tax scheme discriminates against retirees from the federal government or other states when compared to the treatment given retirees from the State of Arkansas, we must find that the tax is in violation of the Constitutional Doctrine of Intergovernmental Tax Immunity. *Phillips Chemical Co.* v. *Dumas Indep. School Dist.*, 361 U.S. 376 (1960).

The appellants argue that in light of our decision in *Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983), the Arkansas statutory tax scheme is presumptively valid, which is true. However, that presumption is not conclusive. The appellees argue that *Davis* did not involve military retirees, which is also true. But again, the fact that the taxpayer in *Davis* was not a military retiree is not determinative of how this Court should rule.

The crux of this first point is whether the tax levied by the State of Arkansas discriminates against the taxpayers because of the *source* of the pay or compensation. If the source is the basis for the discrimination, then the state tax cannot withstand the constitutional prohibition found in the Doctrine of Intergovernmental Tax Immunity which forbids such discrimination. If the discrimination is based upon the *nature* of the compensation then the Doctrine does not forbid discrimination. The appellants argue that military pay is not a pension or deferred compensation, but actually represents reduced pay for reduced service, and thus the Arkansas tax is discriminatory only as to the nature of the compensation, *i.e.*, compensation for military service rather than compensation for state civil service. We disagree with the appellants' argument that military pay is reduced pay for reduced service, and believe that those cases which hold that military pay is actually deferred compensation or in the nature of a pension represent the better reasoned application law. *See Young* v. *Young*, 288 Ark. 33, 701 S.W.2d 369 (1986); *Askins* v. *Askins*, 288 Ark. 333, 704 S.W.2d 632 (1986), *Womack* v. *Womack*, 16 Ark. App. 108, 697 S.W.2d 930 (1985).

Appellants also argue that retirees from another state were not discriminated against under the Arkansas tax laws. Obviously that other state's retirees' pay is in the nature of a pension, just like the Arkansas state retirees. Thus the discrimination between the retired Arkansas civil service employee and the retiree from the civil service of another state is even more clear than in the case of the military retiree. The Arkansas tax levied upon the compensation of the military retirees and retirees from the civil service of other states is discriminatory when compared with the tax levied upon the compensation of the Arkansas civil service retirees. In other words, the tax discriminates based upon the source of the payment, since the source of one payment is the State of Arkansas and the source of the military pay is the federal

government, and the source of the pay to a retiree from the civil service of another state is that other state's government, and therefore such tax violates 4 U.S.C. § 111 and the Doctrine of Intergovernmental Tax Immunity. Finally, since the retirees of the governments of other states and the military retirees are part of the same class of plaintiffs here, and are discriminated against on the same basis, they are properly in the same class. *Ross* v. *Arkansas Communities, Inc.*, 258 Ark. 925, 529 S.W.2d 876 (1975). The Chancellor is given wide latitude in certifying classes, and we find the certification in this case to be correct. *International Union of Elec., Radio & Mach. Workers* v. *Hudson.*

## DID THE CHANCELLOR ERR IN AWARDING REFUNDS OF THE ARKANSAS INCOME TAX COLLECTED ON RETIREMENT INCOME OF THE CERTIFIED CLASS?

Next the appellants argue that the Chancellor erred in awarding refunds of the Arkansas income tax collected on retirement income of the certified class. The issue here is whether we are to apply retroactively our finding that the Arkansas tax is unconstitutional. *Davis* is of no value here since there the state of Michigan admitted that under their laws a refund was due. However there is other guidance. *Chevron Oil Co.* v. *Huson*, 404 U.S. 97 (1971) sets forth three factors which must be considered in determining the retrospective application of *Davis*. As made applicable to this case, they are first if the *Davis* decision establishes a new principle of law, either by overruling clear past precedent on which litigants have relied, or by deciding issues of first impression not clearly foreshadowed, then the decision need not be applied retroactively, otherwise it *must. Hanover Shoe* v. *United Shoe Machinery Corp.* 392 U.S. 481 (1968). Second, this court must weigh the merits and demerits of retroactive application based upon the prior history of the doctrine, the purpose and effect and whether retroactive application will further or retard its operation. *Linkletter* v. *Walker*, 381 U.S. 618 (1965). Third, if the retroactive application of *Davis* produces substantial inequitable results, and such hardship may be avoided, the rule need not be applied retroactively. *Cipriano* v. *City of Houma*, 395 U.S. 701 (1969).

The Supreme Court of Virginia has held that *Davis* need not be applied retroactively. *See Harper* v. *Virginia Dept. of Taxation*, 401 S.E.2d 868 (Va. 1991). The Virginia Court looked to *American Trucking Associations, Inc.* v. *Smith*, ___ U.S. ___, 110 S.Ct. 2323, 110 L.Ed. 2d 148, 58 U.S.L.W. 4704 (1990), and determined that the *Chevron* test must be used. After an analysis of *Chevron* the Virginia court held that retroactivity was not necessary. We respectfully disagree with that holding.

The appellees argue that regardless of the three *Chevron* factors, our ruling here *must* be applied retroactively, citing *McKesson Corporation* v. *Division of Alcoholic Beverages and Tobacco*, 110 S.Ct. 2238 (1990), *Dep't of Business Regulation*, 110 L.Ed. 2d 17, (1990), *American Trucking Associations, Inc.* v. *Smith*, ___ U.S. ___, 110 S. Ct. 2323, 111 L.Ed.2d 148 (1990); *Ashland Oil, Inc.* v. *Caryl, Tax Commissioner*, ___ U.S. ___, 110 S.Ct. 3202, 111 L.Ed. 2d 734 (1990) and *National Mines Corporation* v. *Caryl, Tax Commissioner*, ___ U.S. ___, 110 S.Ct. 3205, 111 L.Ed. 2d 740 (1990). Under either theory, we hold that *Davis*, 489 U.S. 803, must be applied retroactively.

In support of the satisfaction of the first *Chevron* prong, the appellants argue that *Davis* and thus presumably our holding here, would be a new principle of law and a case of first impression, and therefore need not apply retroactively. We disagree. We believe that neither *Davis* nor our opinion here establishes a new principle of law. A review of the extensive historical discussion in *Davis* will clearly show that the Doctrine of Intergovernmental Tax Immunity has been applied for decades. The fact that this issue has never been before this court, or the Supreme Court, on these facts does not make this a new principle of law or a case of first impression, just a fresh statement of the applicability of a long standing doctrine.

In support of the applicability of the second *Chevron* prong, the appellants argue that since the General Assembly immediately changed the law to comply with *Davis* retroactivity would not advance the Doctrine of Intergovernmental Tax Immunity. Again, we disagree. Obviously retroactive application will advance the doctrine for the members of this class. Also, a refusal to apply the doctrine in this case may retard the recognition of it in other matters which come before the Arkansas legislature which

might fall under the scope of the doctrine.

As to the third prong, the appellants argue that evidence presented at trial showed that the retroactive application of this decision would create hardships for the State of Arkansas, its political subdivisions, and taxpayers. No doubt the State of Arkansas will suffer financial loss by making a refund to the members of this class who follow the procedures for such refund. However, the third prong of *Chevron* requires that the decision be applied retroactively unless a substantial inequitable result will occur *as a result of the decision*. If inequitable results occur whether retroactively is applied or not, we must make the ruling retroactive. Our decision in this case itself does not create the hardship. It will exist regardless of the outcome of this case. Clearly if the members of this class are not given the relief they have prayed for, they will be treated inequitably in that they will have paid an unconstitutional tax. Someone here will suffer, either the state or the taxpayers. We are not simply picking the class for refund based on need, nor are we penalizing the state. We are determining that since one of two inequitable results must occur, we are required to apply the ruling retroactively.

## DID THE CHANCELLOR ERR IN ALLOWING REFUNDS TO MEMBERS OF THE CLASS WHO HAD NOT FILED AMENDED INCOME TAX RETURNS FOR 1985?

Next the appellants urge for reversal the proposition that the Chancellor erred in allowing refunds to members of the class who had not filed amended income tax returns for 1985. Appellants point to Ark. Code Ann. § 26-18-507 (1987) as the authority for its proposition. That statute sets forth the procedure for making a claim for a refund. The appellees argue that requiring strict compliance with § 26-18-507 by every member of the class would ignore one of the bases for class actions suits, i.e. to deal with these types of issues in a single action rather than requiring all members of a class to bring suit. Although this court has not ruled on this precise issue as applicable to tax refunds, there is ample authority for the appellees' position and we adopt that reasoning. *See Santa Barbara Optical Co.* v. *State Bd. of Equalization*, 47 Cal. App.3d 244, 120 Cal. Rptr. 609, (1975); *Ware* v. *Idaho State Tax Commission*, 98 Idaho 477, 567 P.2d

423 (1977); *Clark* v. *Lee*, 273 Ind. 572, 406 N.E.2d 646 (1980); *Thorn* v. *Jefferson County*, 375 So.2d 780 (Ala. 1979); and *Florito* v. *Jones*, 39 Ill. 2d 531, 236 N.E.2d 698 (1968).

Our decision in *International Union of Elec., Radio & Mach. Workers* discusses the issues presented here as applicable to class actions generally, and we believe supports the Chancellor in his application of the rules to this class.

## DID THE CHANCELLOR ERR IN AWARDING ATTORNEY'S FEES?

Finally, the appellants argue that the Chancellor erred in awarding attorney's fees in this case. This assignment of error is based upon an argument that only when the attorneys for the class establish or preserve a fund for the class are they entitled to attorney's fees. The appellants maintain that the fund here is established by the legislature as the Income Tax Refund Account for the payment of refunds to all taxpayers. The appellees maintain that the appellants have no standing to argue that attorney's fees should be awarded under the common fund doctrine, citing *Boeing Co.* v. *Van Gemert*, 444 U.S. 472 (1980).

An order of the Chancellor, obtained though the efforts of the attorneys for the appellees, required the Income Tax Refund Account to be maintained at an amount not less than $8,000,000. Presumably this account would have been depleted or returned to the state treasury if not needed for other refunds if the order had not been entered. The attorneys for the class obtained the order which kept the fund at a minimum of $8,000,000 and thus we hold that the common fund was preserved by the attorneys for the class, and thus an award from that fund was proper.

Affirmed.

Special Justices Ray Baxter and Carolyn Clegg join in this opinion.

Holt, C.J., and Glaze and Corbin, JJ., not participating.

Dudley, Hays, and Newbern, JJ., dissent.

David Newbern, Justice, dissenting. There is no final, appealable order in this case. *See* Ark. R. App. P. 2(a). We,

therefore, lack jurisdiction to hear the appeal. *Wilburn* v. *Keenan Companies, Inc.*, 297 Ark. 74, 759 S.W.2d 554 (1988); *Kilgore* v. *Viner*, 293 Ark. 187, 736 S.W.2d 1 (1987).

The Trial Court's order establishes that the state taxes paid on retirement income received by the appellee class members were unlawfully collected and that the members are entitled, individually, to refunds for a period governed by the statute of limitations. The order then speaks of a "common fund" from which counsel representing the class will be entitled to be paid a fee. The amount of the "common fund" is undecided. We do not know how much money will be returned to the class or to any member. The amount they will receive will depend upon the amount of the attorney's fees to be paid from the fund. A dissatisfied class or class member may wish to appeal with respect to that determination once it has been made.

In *Estate of Hastings* v. *Planters and Stockmen Bank*, 296 Ark. 409, 757 S.W.2d 546 (1988), and in *Thomas* v. *McElroy*, 243 Ark. 465, 420 S.W.2d 530 (1967), we determined that an order for a money recovery which is not reduced to a specific dollars and cents amount is not a final order. We said it must be such a final determination as may be enforced by execution or in some other appropriate manner. In this case, it is obvious that neither the class nor any claimant can proceed to execute the judgment. While it may be that "some other appropriate manner" would include presentations of individual tax return claims, if indeed there is a "common fund" from which recovery is to be claimed by individuals, the amount of that fund has not been ascertained.

If the question in this case were simply the amount a party was to pay his or her attorney, having nothing to do with the recovery to be awarded ultimately to the party, I might agree with the majority's characterization of the issue as a "collateral" or "ministerial" one. The question here, however, is much more fundamental as it will determine the actual recovery to be had by the class and its individual members.

I predict there will be additional questions, such as prejudgment and post-judgment interest, which may, along with the attorney's fee question, also give rise to questions for appeal in this matter. The reason for our finality rule is to discourage

piecemeal appeals. *Wilburn* v. *Keenan Companies, Inc., supra*; *Mueller* v. *Killiam*, 295 Ark. 270, 748 S.W.2d 141 (1988). It should be applied in this case.

I respectfully dissent.

DUDLEY and HAYS, JJ., join in this dissent.