EUGENE H. DUFFY et al., on Behalf of Themselves and All Others Similarly Situated, Respondents-Appellants, and ALBERT ENGEL et al., Proposed Intervenors-Appellants, v JAMES W. WETZLER, Individually and as Commissioner of Taxation and Finance of the State of New York, et al., Appellants-Respondents.

Second Department, January 15, 1992

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Peter H. Schiff* and *Denise A. Hartman* of counsel), for James W. Wetzler and others, appellants-respondents.

*O. Peter Sherwood, Corporation Counsel (Edward F.X. Hart, Stanley Buchsbaum, Frances J. Henn* and *Edith I. Spivack* of counsel), for Anthony Shorris and others, appellants-respondents.

*Anderson Kill Olick & Oshinsky, P. C. (Rudolph W. Giuliani, Mark L. Weyman* and *Roberto Velez* of counsel), *Phelan & Costello, P. C. (John J. Phelan III, Robert J. Costello* and *Michael F. Fitzgerald* of counsel), and *O'Neil, Cannon & Hollman, S. C. (Eugene O. Duffy* and *Gregory W. Lyons* of counsel), for respondents-appellants and proposed plaintiffs-intervenors-appellants. (One brief filed.)

## OPINION OF THE COURT

THOMPSON, J. P.

■ The main issue arising at bar is whether the decision in the instant case should be applied retroactively, or prospectively, pursuant to the recent decision of the United States Supreme Court in *James Beam Distilling Co. v Georgia* (501 US —, 111 S Ct 2439 [hereinafter *Beam]).* We conclude that an analysis of *Beam* requires prospective application on the facts. For the reasons which follow therefore, we modify the order and judgment from which the first appeal ensues, and affirm the orders appealed from.

I

The plaintiffs commenced this action on May 9, 1989, on behalf of themselves and purportedly all Federal retirees similarly situated, seeking a declaratory judgment, a permanent injunction, and damages as a result of the United States Supreme Court decision on March 28, 1989, in *Davis v Michigan Dept. of Treasury* (489 US 803 [hereinafter *Davis]).* In that case, the Supreme Court invalidated, as unconstitutional, Michigan's tax scheme which exempted from taxation pensions paid to former State employees but taxed the pensions paid to all other retirees, including those of the Federal Government. *Davis' ratio decidendi* was predicated on a construction of 4 USC § 111, which provides, in pertinent part, that the Federal Government consents to the taxation of its

officers or employees "by a duly constituted taxing authority having jurisdiction, *if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation*" (emphasis added). The *Davis* court held that 4 USC § 111 applied to both retirement and ordinary income, and it found discrimination, and a violation of the principles of intergovernmental tax immunity in Michigan's exemption of State retiree pensions. While it will be more relevant later, it bears noting at this juncture that *Davis* never *decided* the point regarding prospectivity or retroactivity, and therefore made no determination as to refunds of those taxes which had been unconstitutionally assessed and collected.

Interestingly enough, at the time of the *Davis* decision, at least 19 States, including New York, had tax or pension statutes that included exemptions similar to Michigan's. Not surprisingly, *Davis* spawned a mass of litigation in many States on behalf of Federal retirees seeking, as do the plaintiffs at bar, an adjudication of the constitutionality of such statutes and/or refunds of taxes paid.

In 1920, both the Greater New York Charter and the New York Civil Service Law were amended to render exempt from State and municipal taxes the pensions of officers and employees of the State and City *(see,* L 1920, chs 427, 741). In 1939, a similar provision was incorporated into the New York Constitution as article XVI, § 5 which provides that "[a]ll salaries, wages and other compensation, *except pensions,* paid to officers and employees of the state and its subdivisions and agencies shall be subject to taxation" (emphasis added). This provision was also legislated into Tax Law § 612 (c) (3), one of the statutes at issue, "subtract[ing] from federal adjusted gross income * * * [p]ensions to officers and employees of this state". Also in 1939, in response to *Graves v New York ex rel. O'Keefe* (306 US 466) and the Public Salary Tax Act of that year (5 USC former § 84a [now 4 USC § 111]), New York first began to tax the compensation paid to Federal employees *(see,* L 1939, ch 619; codified as Tax Law § 359 [6], and later repealed by L 1987, ch 267). For the first time in 1966, the City adopted a personal income tax containing an identical exemption for State and City pensions *(see,* Administrative Code of City of New York former § T46-112.0 [c] [3]; L 1966, ch 773, § 1, adding General City Law § 25-a, and Model Local Law § 12 [c], set forth thereafter). In 1981, the State Legislature added a section to both the State and City personal income taxes which exempted from taxation pension benefits

of all kinds up to the first $20,000 for any retirees over the age of 59½ (Tax Law § 612 [c] [3-a]; Administrative Code former § T46-112.0 [c] [3-a] [now § 11-1712 (c) (3-a)]). At the crux of the instant action is the taxation of pension benefits of Federal retirees above this first $20,000, and of the total pension benefits of all Federal retirees under the age of 59½.

Soon after the *Davis* decision, and prior to this action, efforts were made to conform the State and City taxing schemes to *Davis*. On July 21, 1989, the Legislature amended Tax Law § 612 (c) (3) and section 11-1712 of the Administrative Code to place pensions paid to Federal retirees in the same position as pensions of State retirees (L 1989, ch 664, §§ 1, 2). The Legislature declared that the amendment was to take effect "immediately and shall apply to federal pension benefits received in taxable years beginning on or after January 1, 1989" (L 1989, ch 664, § 3).

The plaintiffs' second amended complaint, served on December 23, 1989, set forth four causes of action. The first alleged a violation of 42 USC § 1983 and sought damages against the defendant Wetzler, the current Commissioner of Taxation and Finance of the State, and various current and former functionaries in the State and City finance departments. The plaintiffs alleged that in enforcing the impugned Tax Law and Administrative Code, these defendants violated the plaintiffs' right guaranteed under 4 USC § 111 (principles of intergovernmental tax immunity), US Constitution, article VI, clause (2), and the Due Process and Equal Protection Clauses of the US Constitution. The second cause of action sought a declaration that Tax Law § 612 (c) (3) and Administrative Code of the City of New York § 11-1712 (c) (3) were unconstitutional. It also sought a refund for the years 1986 through 1989 and asked that those refund rights not be qualified by permitting only prospective application of the decision. In the third cause of action, the plaintiffs sought an injunction against the State and City defendants preventing them from collecting taxes on Federal pensions for the years 1986 through 1989, and to set up a trust fund for repayment of such allegedly unlawfully collected taxes. The fourth cause of action sought a refund from the City for money had and received. The second amended complaint also sought class certification and class attorneys' fees. After service of their answers, the State and City defendants moved for summary judgment on the ground that *Davis* applied prospectively only, since it was completely unforeseeable.

The Supreme Court (LeVine, J.), *inter alia,* determined that the plaintiffs were entitled to refunds and enjoined the defendants from collecting the taxes as described therein for the period 1986 through 1988 *(Duffy v Wetzler,* 148 Misc 2d 459). The court reasoned that the *Davis* decision mandated a declaration that "[t]he City and State personal income tax scheme which taxed Federal pension benefits * * * while exempting from taxation State and local pension benefits, [was] discriminatory, invalid and unconstitutional" *(Duffy v Wetzler, supra,* at 470). It observed that the 1989 amendments to the Tax Law and the Administrative Code were prospective only. "Thus, Federal pension benefits received in years prior to 1989 remain[ed] subject to taxation and collection to the extent that the Statute of Limitations applie[d]" *(Duffy v Wetzler, supra,* at 465). The court found that there was no need to determine "whether *Davis* * * * should have prospective or retroactive application, as the question of entitlement, method and extent of a tax refund is governed by New York's Tax Law" *(Duffy v Wetzler, supra,* at 466). It referred to Tax Law § 687 (a), which provided, in pertinent part, that a claim for a credit or an overpayment of income tax must be filed within the later of two periods, either three years from the date of filing of the return or two years from the date of payment of the tax. The court in *Duffy* found that although "overpayment" was not defined in the Tax Law, a reference to Federal income tax law, as well as Supreme Court decisions, yielded the conclusion "that overpayments arising out of the payment of a tax later held to be unconstitutional are recoverable in the same manner as other overpayments, provided that a timely claim is filed" *(Duffy v Wetzler, supra,* at 466). We disagree.

## II

Central to the issue of tax refunds is the prior determination of the prospectivity versus retroactivity question. In our view, the court's opinion that a reference to Tax Law § 687 (a) resolves the matter is a non sequitur, ignoring, as it does, the point, argued by the defendants, that there would be no "overpayment" if *Davis* is given prospective effect only. Moreover, none of the Supreme Court decisions cited by the court involved the issue of prospectivity/retroactivity *(see, e.g., Jones v Liberty Glass Co.,* 332 US 524; *Kavanagh v Noble,* 332 US 535). Hence, before a discussion of the proper construction of the term "overpayment" is reached, a determination of the prospectivity/retroactivity problem must be made. Prior to the

recent decision of the United States Supreme Court in *Beam (supra)*, the leading case on this issue was *Chevron Oil Co. v Huson* (404 US 97). In that case, the Supreme Court set forth, in the following language, the criteria for a prospective application of a decision: "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * * Second, it has been stressed that 'we must weigh . . . the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation' * * * Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity' " *(Chevron Oil Co. v Huson, supra,* at 106-107). An ancillary question at bar, therefore, is the extent to which the *Chevron Oil* case is still a valid precedent. For an answer to this, we turn to an analysis of *Beam.*

In *Beam,* the facts were that Georgia State law, prior to its amendment in 1985, had imposed an excise tax on imported alcohol and distilled spirits at a rate double that imposed on alcohol and distilled spirits manufactured from Georgia-grown products. In 1984, a Hawaii statute that similarly distinguished between imported and local alcoholic products was held, in *Bacchus Imports v Dias* (468 US 263), to be violative of the Commerce Clause. Following *Bacchus,* the petitioner, a Delaware corporation and Kentucky bourbon manufacturer, claimed Georgia's law to be similarly inconsistent with the Commerce Clause and sought a refund of $2,400,000 representing the full amount of excise taxes paid for the years 1982, 1983, and 1984. The trial court and the Supreme Court of Georgia held that the pre-1985 version of the statute violated the Commerce Clause but applied that finding on a prospective basis only, in the sense that it declined to declare the State's application of the statute unconstitutional for the years in question. The Georgia Supreme Court Court relied on *Chevron Oil Co. v Huson (supra),* and concluded that, but for *Bacchus,* its decision on the constitutional question would have established a new rule of law by overruling past precedent.

The United States Supreme Court reversed, and remitted the matter for further proceedings. The decision was, however, by plurality, with one main opinion delivered by Justice Souter (concurred in by Justice Stevens), three separate concurrences, and a dissent. Justice Souter's opinion commenced with the observation that "[s]ince the question is whether the court should apply the old rule or the new one, retroactivity is properly seen in the first instance as a matter of choice of law, 'a choice...between the principle of forward operation and that of relation backward' " *(James Beam Distilling Co. v Georgia, 501 US —, —, 111 S Ct 2439, 2443, supra).* Once a rule is found to apply retroactively there may then be a further issue of remedies, i.e., whether the party prevailing under a new rule should obtain the same relief that would have been awarded if the rule had been an old one. "Subject to possible constitutional thresholds * * * the remedial inquiry is one governed by state law, at least where the case originates in state court * * * But the antecedent choice-of-law question is a federal one where the rule at issue itself derives from federal law, constitutional or otherwise" *(James Beam Distilling Co. v Georgia, supra, 501 US, at —, 111 S Ct, at 2443).*

As enumerated in *Beam,* there were three ways in which the choice of law problem might be resolved. The first was full retroactivity, applying the decision both to the parties before the court and to all others similarly situated, consistent with res judicata and procedural barriers such as Statutes of Limitation. This practice is "overwhelmingly the norm" but attracted the criticism that "[it fails] to take account of reliance on cases subsequently abandoned, a fact of life if not always one of jurisprudential recognition" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2443). The second choice of law resolution was "the purely prospective method of overruling, under which a new rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision. The case is decided under the old law but becomes a vehicle for announcing the new, effective with respect to all conduct occurring after the date of that decision" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2443). This method, however, had the drawback that it tended to relax the force of precedent, by minimizing the costs of overruling and thereby allowing the courts to act with a freedom comparable to that of legislatures. The Justice noted that the court had, "albeit infrequently, resorted

to pure prospectivity" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2443 [quoting *Chevron Oil Co. v Huson,* 404 US 97, *supra]).* Finally, the court might utilize "modified, or selective, prospectivity", that is, it might apply a new rule to the case in which it was enunciated but return to the old rule with respect to all other cases arising on facts predating the decision *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2444). The weakness of selective prospectivity was its breach of "the principle that litigants in similar situations should be treated the same, a fundamental component of *stare decisis* and the rule of law generally" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2444). Remarking that *Bacchus* had applied its own rule retroactively, Justice Souter held that it was error to refuse to apply a rule of Federal law retroactively after the case announcing the rule had already done so. He noted that "principles of equality and *stare decisis* here [prevailed] over any claim based on a *Chevron Oil* analysis" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2446).

Justice Souter's opinion did not purport to overrule *Chevron Oil.* He noted that litigants could not be distinguished for choice-of-law purposes on the particular equities of their claims to prospectivity, that is, whether they actually relied on the old rule and how they would suffer from retroactive application of the new. He added that to that extent, the decision did limit the possible applications of the *Chevron Oil* analysis. "Because the rejection of modified prospectivity precludes retroactive application of a new rule to some litigants when it is not applied to others, the *Chevron Oil* test cannot determine the choice of law by relying on the equities of the particular case" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2447). The Justice added that once retroactive application had been chosen for any assertedly new rule, it was chosen for all others who might seek its prospective application. "The applicability of rules of law are not to be switched on and off according to individual hardship" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2448). In the final paragraphs of his opinion, Justice Souter noted that the grounds of the court's decision were narrow, confined entirely to an issue of choice-of-law, namely, "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata. *We do*

*not speculate as to the bounds or propriety of pure prospectivity" (James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2448 [emphasis added]).

Justice White concurred with the retroactivity analysis. However, he departed from the main opinion by supporting *Chevron Oil.* He stated that retroactivity could be utilized either on the theory that the new decision was "reasonably foreseeable" and hence "not a new rule" (thus not implicating *Chevron Oil)* or on the view that the *Chevron Oil* factors would support a retroactive application *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2448). He, however, perceived "no precedent in civil cases applying a new rule to the parties in the case but not to other similarly situated" (that is, selective or modified prospectivity) *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2448). The Justice, however, strongly supported the pure prospectivity theory. He said that "[n]othing in the above, however, is meant to suggest that I retreat from those opinions filed in this Court which I wrote or joined holding or recognizing that in proper cases a new rule announced by the Court will not be applied retroactively, even to the parties before the Court * * * [n]or, *without overruling Chevron Oil and those other cases before and after Chevron Oil,* holding that certain decisions will be applied prospectively only, can anyone sensibly insist on automatic retroactivity for any and all judicial decisions in the federal system * * * The propriety of prospective application of decision in this Court, in both Constitutional and statutory cases, is settled by our prior decisions" (James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2449 [emphasis added]). Justice Scalia, with whom Justices Marshall and Blackmun joined, agreed "as an abstract matter" with Justice Souter's reasoning *(supra,* 501 US, at —, 111 S Ct, at 2450). However, he thought both selective prospectivity and pure prospectivity to be constitutionally impermissible since they infringed on the concept of "the judicial power as understood by our common-law tradition" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2451). Justice Blackmun, with whom Justices Marshall and Scalia joined, thought "that prospectivity, whether 'selective' or 'pure' breaches our obligation to discharge our constitutional function" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2450).

The dissent (Justice O'Connor, joined by the Chief Justice and Justice Kennedy) criticized the majority's attempt to

sidestep *Chevron Oil,* which "describes our long-established procedure for making this inquiry" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2451). Turning to Justice Souter's use of equality and stare decisis, Justice O'Connor observed that neither of these two concepts, without a consideration of *Chevron Oil,* led to the view that once a decision was applied retroactively in the case at issue, it had to be applied retroactively to everyone. As to equality, *Chevron Oil's* purpose was to determine the equities of the case, and stare decisis cut exactly the other way by "allow[ing] those affected by the law to order their affairs without fear that the established law upon which they rely will suddenly be pulled out from under them" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2452). Justice O'Connor observed that in Justice Scalia's concurrence in the recent decision of *American Trucking Assns. v Smith* (496 US 167, —, 110 S Ct 2323, 2345 [1990]) he had stated that imposition of retroactive liability on a litigant would *"upset that litigant's settled expectations* because the earlier decision for which *stare decisis* effect is claimed * * * overruled prior law. That would turn the doctrine of *stare decisis* against the very purpose for which it exists" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2452). Utilizing a *Chevron Oil* analysis, Justice O'Connor concluded that the *Bacchus* case should not have been applied retroactively. It established a new rule *("Bacchus'* rule * * * came out of the blue") *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2455). And as regards the equities, the Justice stated that "the legitimate expectation of James Beam and other liquor manufacturers was that they had to pay the tax here at issue and that it was constitutional. They made their business decisions accordingly. There is little hardship to these companies from not receiving a tax refund they had no reason to anticipate" *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2455). Finally, Justice O'Connor stated that the court had perverted the meaning of the terms "equality" and "stare decisis" on which it purported to base its retroactivity analysis *(James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2450).

It goes without saying that *Beam* is not susceptible to easy explanation and requires the unsalutary procedure, as in all plurality decisions, of a judicial head-count. However, two points appear clear beyond equivocation. First, none of the opinions suggests that *Chevron Oil* has been overruled. In-

deed, there appears to be a plurality (Justices White, Stevens, Souter, and the three dissenters) who support pure prospectivity as enunciated in *Chevron Oil*. What separated the two camps was the issue whether or not it applied in *Beam* itself (Justices Marshall, Blackmun, and Scalia appear hostile to prospectivity in any form). Second, *Beam* is, as Justice Souter noted, a narrow decision, committed only to the removal of the doctrine of modified or selective prospectivity from this area of the doctrine of precedent ("when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata. We do not speculate as to the bounds or propriety of pure prospectivity" *[James Beam Distilling Co. v Georgia, supra,* 501 US, at —, 111 S Ct, at 2448]).

It is clear, therefore, that *Chevron Oil*, after *Beam,* continues to maintain its precedential vitality. It also bears noting that in two decisions, *Gager v White* (53 NY2d 475, 483-484), and *Matter of Jessica XX.* (54 NY2d 417, 424, *affd sub nom. Lehr v Robertson,* 463 US 248), the Court of Appeals adopted a *Chevron Oil* analysis. Thus we do not agree with the proposition that "[t]he continued viability of the *Chevron* test is left in doubt by *[Beam]"* *(see, Kuhn v State,* 817 P2d 101, 110, n 8 [Colo]).

### III

In a proper case, *Beam* permits, or more precisely, does not proscribe a reference to the *Chevron Oil* criteria in determining whether a decision should have wholly prospective application. We hold that such an approach is mandated on the facts at bar and that the *Davis* decision fits the *Chevron Oil* criteria for prospective application.

*Davis* "establish[ed] a new principle of law * * * by deciding an issue of first impression whose resolution was not clearly foreshadowed" *(Chevron Oil Co. v Huson,* 404 US 97, 106, *supra).* The *Davis* decision was predicated on principles of intergovernmental tax immunity, described as "a most esoteric of constitutional philosophies" *(see, Bohn v Waddell,* 164 Ariz 74, 86, 790 P2d 772, 784, *adhered to on reconsideration,* 167 Ariz 344, 807 P2d 1). Indeed, the path from *McCulloch v Maryland* (4 Wheat [17 US] 316), the *locus classicus* in this area, to *Davis* has been anything but a straight line *(see, Davis v Michigan Dept. of Treasury,* 489 US 803, 810-815, *supra,* per Kennedy, J. for an historical exposition; *see also,*

*Bohn v Waddell, supra).* Moreover, in Davis, Justice Stevens delivered a vigorous dissent based on the idea that "[o]nce one understands the underlying reason for the *McCulloch* holding, it is plain that this tax does not unconstitutionally discriminate against federal employees" *(Davis v Michigan Dept. of Treasury, supra,* at 821). In language describing the novelty of this split decision, the Arizona Tax Court (Moroney, J.), in *Bohn v Waddell (supra),* observed that "[i]f justices of the United States Supreme Court cannot agree that the right defined in *Davis* was clearly established before *Davis,* it hardly seems appropriate to charge the individual [d]efendants in this case with such perspicacity" *(Bohn v Waddell, supra,* 164 Ariz, at 86, 790 P2d, at 784).

Turning to the second criterion, nothing in the instant record demonstrates that retroactive application of *Davis* will either retard or further the doctrine of intergovernmental tax immunity. Since the primary purpose of that doctrine is to protect the Federal Government, not private individuals, from being unduly burdened by State taxation *(see,* Senate Rep No. 112, 76th Cong, 1st Sess, 13, to accompany HR 3790), mandatory refunds to the plaintiffs would scarcely remove a threat to the efficient operation of the Federal Government. We also remain unpersuaded by the plaintiffs' contention that retroactive application will deter future enactment of illegal statutes. And as to the third *Chevron criterion, we hold that the equities preponderate in the State's favor. New York State's taxing scheme, enacted in good faith and presumptively valid, was legitimate and in force for 50 years until a new rule was announced in Davis.* In our view, the State should not be required to refund an estimated $44,000,000, particularly in today's parlous fiscal circumstances, when neither the State nor the plaintiffs could reasonably have anticipated the invalidation of a longstanding tax provision. In sum, a *Chevron Oil* analysis mandates a prospective application of the instant decision. We would also note consistently with the *Beam* decision, that the *Davis* court never applied its own rule since Michigan *"conceded* that a refund [was] appropriate in these circumstances" *(Davis v Michigan Dept. of Treasury, supra,* at 817 [emphasis added]; *see also, Pledger v Bosnick,* 306 Ark 45, 811 SW2d 286).

To the extent, therefore, that the Supreme Court's order and judgment in the case at bar awarded refunds and similar relief to the plaintiffs, we now modify that order and judgment by deleting those provisions.

## IV

We agree, however, with the other conclusions indicated in the Supreme Court's judgment. First, the court properly denied the application for class action status. "It is well settled that class action certification is inappropriate in a case such as this where governmental actions are involved and subsequent plaintiffs will be adequately protected under the doctrine of stare decisis" *(Duffy v Wetzler,* 148 Misc 2d 459, 464, *supra,* citing *Matter of Crociata v State Tax Commn.,* 133 Misc 2d 855, *affd* 134 AD2d 112, *affd* 73 NY2d 726; *Conklin v Town of Southampton,* 141 AD2d 596). Nothing in the record at bar justifies a departure from this rule. Second, the court's rejection of the plaintiffs' claims under 42 USC § 1983 was correct. We add only the observation that the defense of qualified immunity, which the court did not reach *(see, Duffy v Wetzler,* 148 Misc 2d 459, 469, *supra),* provided a much simpler basis on which to reject the claims. In *Harlow v Fitzgerald* (457 US 800, 818 [emphasis added]), the United States Supreme Court set forth the parameters of qualified immunity, namely, "that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established statutory or constitutional rights* of which a reasonable person would have known" *(see also, Fox v Coughlin,* 893 F2d 475, 477-478; *Neu v Corcoran,* 869 F2d 662, 665, 667-669, *cert denied* 493 US 816; *Walentas v Lipper,* 862 F2d 414, 421-423, *cert denied* 490 US 1021). The claimed right under 4 USC § 111 was not "clearly established" until *Davis,* and so the individual defendants are "shielded from liability for civil damages." We also agree with the court that, in an action for money had and received, an "appropriate legal protest prior to or at the time of payment [is] a prerequisite to recovery in an action seeking refunds" *(Duffy v Wetzler,* 148 Misc 2d 459, 469, *supra).* The protest requirement was not satisfied at bar. Additionally, the court properly denied the plaintiffs' postjudgment motions seeking variously renewal or reargument of the denial of class certification, permission to add 16 new plaintiffs, intervention by other Federal retirees, and attorneys' fees under the common fund doctrine.

KUNZEMAN, MILLER and O'BRIEN, JJ., concur.

Ordered that the order and judgment (one paper) of the Supreme Court, Queens County, dated June 14, 1990, is modified by deleting therefrom the provisions which (1) declared

that the defendants may not assess and collect personal income taxes on Federal pension benefits received in the years 1986 through 1988 which may be still due and owing, (2) declared that the plaintiffs are entitled to a refund of that portion of their personal income taxes which was paid on Federal pension benefits for the years 1986 through 1988, (3) granted the plaintiffs summary judgment on the third cause of action, and enjoined the defendants from collecting personal income taxes on Federal pension benefits from 1986 through 1988, and (4) enjoined the defendants from interfering with or refusing to grant the plaintiffs a refund of personal income taxes paid on Federal pension benefits from 1986 through 1988; as so modified, the order and judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements; and it is further,

Ordered that the orders are affirmed insofar as appealed from, without costs or disbursements.