878 P.2d 341

**Benjamin B. ALARID, et al.,
Plaintiffs–Appellees,**

v.

**SECRETARY OF the NEW MEXICO
DEPARTMENT OF TAXATION AND
REVENUE, Defendant–Appellant.**

**No. 13887.**

Court of Appeals of New Mexico.

June 7, 1994.

Certiorari Denied July 19, 1994.

Jerry Wertheim, Arturo L. Jaramillo, Jones, Snead, Wertheim, Rodriguez & Wentworth, P.A., Santa Fe, for plaintiffs-appellees.

Tom Udall, Atty. Gen., Frank D. Katz, Margaret B. Alcock, Sp. Asst. Attys. Gen., Dept. of Taxation and Revenue, Santa Fe, for defendant-appellant.

## *OPINION*

FLORES, Judge.

This appeal deals with the validity of a state income tax on retirement benefits. The New Mexico Department of Taxation and Revenue (the Department), appeals from the order granting certain taxpayers (Plaintiffs) summary judgment and ordering the Department to refund the New Mexico state income tax which Plaintiffs paid on their retirement incomes. On appeal, the Department raises the following issues: (1) whether an income tax exemption granted to retirees of New Mexico state educational institutions but not extended to retirees of California state educational institutions discriminates against the federal government in violation of the doctrine of intergovernmental tax immunity (ITI doctrine) when the federal government funds the retirement accounts of the California state educational institution retirees; (2) whether the same exemption discriminates against the sovereign State of California in violation of the ITI doctrine; (3) whether the trial court's decision should be given retroactive effect; and (4) whether the trial court abused its discretion in awarding Plaintiffs certain costs.

We reverse the trial court on issues one and two and accordingly do not address issue three. Furthermore, as to issue four, since we reverse the grant of summary judgment in favor of Plaintiffs, they are not entitled to their costs below. *See* NMSA 1978, § 39-3-30 (Repl.Pamp.1991).

## *BACKGROUND*

Plaintiffs are retired employees of the University of California or spouses of such employees. The University of California is a public educational institution of the State of California and operates Los Alamos National Laboratory through a contract with the federal government. Upon their retirement from the laboratory, Plaintiffs became eligible to receive retirement income from the State of California under the California Public Employees Retirement System (CalPERS), the University of California Retirement System (UCRS), or both. Pursuant to its contract with the federal government, the University of California is required to pay the employer's share of retirement contributions and administrative costs assessed by CalPERS and UCRS. The University of California pays these retirement costs from a special segregated bank account in which title to the funds remains in the federal government until payment of these retirement costs is made. The University of California attains no right, title, or interest in these federal funds other than to make allowable expenditures as specified in the contract.

From 1986 through 1989, Plaintiffs, who are New Mexico residents, received their retirement income through one or both of the California retirement plans in the form of deferred compensation. The State of New Mexico, through the Department, taxed this income pursuant to NMSA 1978, Section 7-2-3 (Repl.Pamp.1988). That statute provided, in pertinent part, that a tax was to be imposed "upon the net income of every resident individual." *Id.*

During the same time period, the retirement income of other New Mexico residents formerly employed by New Mexico state educational institutions was exempt from state taxation. *See generally* NMSA 1978, § 22-11-42(A) (Cum.Supp.1988). The exemption was repealed effective January 1, 1990. *See* 1990 N.M.Laws, ch. 49, §§ 17, 24.

In March 1991, Plaintiffs filed a complaint seeking a refund of the New Mexico income tax which they paid on their retirement income during the calendar years of 1986 through 1989. Plaintiffs' position was that: (1) the New Mexico income tax exemption discriminated against them based on their dealings with the federal government; and (2) the tax exemption also discriminated against them based on their dealings with the State of California.

Plaintiffs filed a motion for summary judgment claiming that the income tax imposed on their retirement benefits violated the ITI doctrine and, therefore, they were entitled to

a refund of those taxes. In a cross-motion for summary judgment, the Department argued that the ITI doctrine was not applicable since the doctrine was concerned solely with relations between a state government and the federal government and the basis for determining who was eligible for the New Mexico tax exemption had nothing to do with the taxpayers' relationship to the federal government.

The trial court found that there were no genuine issues of material fact and concluded that Plaintiffs were entitled to summary judgment as a matter of law because the New Mexico income tax, as applied to Plaintiffs' retirement income, violated the ITI doctrine. The trial court ordered the Department to determine the refund amounts due Plaintiffs for the years 1986 through 1989 and to distribute such amounts accordingly.

## DISCUSSION

■ The Department timely appeals and seeks reversal of the grant of summary judgment to Plaintiffs. Summary judgment "is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law[.]" *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 163, 848 P.2d 1086, 1090 (Ct.App.), *cert. denied*, 115 N.M. 60, 846 P.2d 1069 (1993). It is a remedy which should be applied with great caution. *Id.*

■ The trial court granted Plaintiffs summary judgment on the basis that the taxation of Plaintiffs' retirement income operates to discriminate against those who deal with the federal government and the sovereign State of California in violation of the ITI doctrine. The ITI doctrine is based on the need to protect one sovereign's governmental operations from undue interference by another sovereign. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 814, 109 S.Ct. 1500, 1507, 103 L.Ed.2d 891 (1989). In general, the ITI doctrine prohibits taxes that are imposed directly on one sovereign by another or that discriminate against a sovereign or those with whom the sovereign deals. *Id.* at 811, 109 S.Ct. at 1505.

The ITI doctrine was developed early in the history of the Republic "to help weld our federal system into a viable Nation, by providing a safeguard for federal operations against hampering or crippling state and local taxation." Paul J. Hartman, *Federal Limitations on State and Local Taxation* § 6:1, at 220 (1981). From its genesis it was recognized that the pivotal point in the application of the ITI doctrine was a question of supremacy within the context of federalism. David M. Richardson, *Federal Income Taxation of States*, 19 Stetson L.Rev. 411, 414–15 (1990). Chief Justice Marshall eloquently and elaborately set forth the rationale of the doctrine in the landmark case *McCulloch v. Maryland:*

> That the power of taxing [the National Bank] by the states may be exercised so as to destroy it, is too obvious to be denied. But taxation is said to be an absolute power, which acknowledges no other limits than those expressly prescribed in the constitution, and like sovereign power of every other description, is intrusted to the discretion of those who use it. But the very terms of this argument admit, that the sovereignty of the state, in the article of taxation itself, is subordinate to, and may be controlled by the constitution of the United States. How far it has been controlled by that instrument, must be a question of construction. In making this construction, no principle, not declared, can be admissible, which would defeat the legitimate operations of a supreme government.

17 U.S. (4 Wheat) 316, 427, 4 L.Ed. 579 (1819).

The philosophical underpinnings of the *McCulloch* case thus appear to be grounded solidly in the Supremacy Clause, and the early cases were in harmony with these underpinnings. *See Dobbins v. Commissioners of Erie County*, 41 U.S. (16 Pet.) 434, 448–49, 10 L.Ed. 1022 (1842) (invalidating state tax on federal employee). However, in the last part of the last century, *McCulloch* was read expansively to bar most taxation by one sovereign of another. *See Collector v. Day*, 78 U.S. (11 Wall.) 113, 124, 20 L.Ed. 122 (1870) (invalidating federal tax on state employee). Earlier this century, the Supreme Court con-

siderably narrowed the ITI doctrine, first by holding that the federal government could levy on a state employee a tax that did not threaten essential governmental functions, *see Helvering v. Gerhardt,* 304 U.S. 405, 424, 58 S.Ct. 969, 977, 82 L.Ed. 1427 (1938), and the very next year by overruling the *Dobbins–Day* line of cases and holding that the federal government could levy nondiscriminatory taxes on government employees, including state government employees, *see Graves v. New York ex rel. O'Keefe,* 306 U.S. 466, 486–87, 59 S.Ct. 595, 601–02, 83 L.Ed. 927 (1939).

■ Based on this history, Plaintiffs contend that the modern ITI doctrine bars any taxes that discriminate in any way against a person who deals with the federal government or a person who deals with the government of another state. As will be seen, however, in making such an argument Plaintiffs ignore the concept of sovereignty that is at the heart of the ITI doctrine. Thus, although the ITI doctrine has had an uneven course, the polestar in its application remains whether and to what extent the state tax at issue will impinge upon a legitimate governmental goal of another sovereign. *See* Note, *Supreme Court Decisions in Taxation: 1981 Term,* 36 Tax Law. 421, 482–85 (1983). It is against this basic standard that we must judge the Plaintiffs' arguments.

I. *The Incidence of the Tax Does Not Fall On or Discriminate Against the Federal Government*

■ Relying on *Davis,* the trial court first reasoned that because Plaintiffs' retirement benefits were ultimately paid by the federal government, those benefits were entitled to the same immunity from state taxation afforded to the *Davis* employees whose retirement income was also paid by the federal government. *Davis* is distinguishable from the present case based on the "incidence" of the tax. Moreover, not only did the New Mexico tax not fall on the United States, but also the tax did not discriminate against Plaintiffs based on their dealings with the federal government.

*Davis* held that an income tax exemption granted to a state's own retirees, but not extended to federal retirees, violated the ITI doctrine as codified in 4 U.S.C. § 111 (1988). In *Davis,* the only difference between the two classes of taxpayers was the source of their income. Employees whose retirement income was received from the State of Michigan were exempt from state taxation, while employees whose retirement income was received from the federal government were not exempt. Thus, under *Davis,* it was held a violation of 4 U.S.C. § 111 for a state to discriminate against the federal government by exempting only that retirement income received from the state, while not exempting retirement income received from the federal government.

The parties here stipulated that the source of Plaintiffs' income was not the federal government, but rather the State of California. Therefore, 4 U.S.C. § 111, the cornerstone of *Davis,* does not apply. Although the cost of Plaintiffs' retirement benefits was ultimately passed on to the federal government under the terms of its contract with the University of California, this fact is irrelevant because the "legal incidence" of the tax does not fall upon the federal government or its instrumentalities. *See United States v. County of Fresno,* 429 U.S. 452, 459, 97 S.Ct. 699, 703, 50 L.Ed.2d 683 (1977) ("States may not impose taxes directly on the Federal Government, nor may they impose taxes the legal incidence of which falls on the Federal Government."). In this regard, the United States Supreme Court has stated:

[U]nder [the] current intergovernmental tax immunity doctrine the States can never tax the United States directly but can tax any private parties with whom it does business, even though the financial burden falls on the United States, as long as the tax does not discriminate against the United States or those with whom it deals.... A tax is considered to be directly on the Federal Government only "when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities."

*South Carolina v. Baker,* 485 U.S. 505, 523, 108 S.Ct. 1355, 1366–67, 99 L.Ed.2d 592

(1988) (citations omitted) (quoting *United States v. New Mexico*, 455 U.S. 720, 735, 102 S.Ct. 1373, 1383, 71 L.Ed.2d 580 (1982)).

■ In this case, the tax on Plaintiffs' retirement income fell directly on Plaintiffs based on their status as residents of New Mexico. Sections 7-2-3 or 22-11-42 did not mandate that the tax be passed on to the State of California or the federal government. Furthermore, Plaintiffs and the federal government are not so closely connected that they cannot be viewed as separate entities. Plaintiffs were employees of the University of California and the retirement benefits were paid to Plaintiffs because they were employed by the State of California, not the federal government. The only relationship between the federal government and Plaintiffs was the fact that the costs of Plaintiffs' retirement benefits were passed on to the federal government under the terms of the federal government's contract with the University of California. This tenuous relationship does not satisfy us that Plaintiffs and the federal government should be considered as one entity. Also, the fact that the University of California operated Los Alamos National Laboratory through funding provided by a contract with the federal government does not mean that the University of California is a party with whom the federal government deals for intergovernmental immunity tax purposes. *See Baker*, 485 U.S. at 520.

■ When the legal incidence of a state tax falls upon an entity doing business with the federal government, it is the incidence of the tax and not the indirect economic consequences that determines whether a tax is barred by federal constitutional immunity. *North Dakota v. United States*, 495 U.S. 423, 439, 110 S.Ct. 1986, 1996, 109 L.Ed.2d 420 (1990); Charles A. Trost, *Federal Limitations on State and Local Taxation* § 6:15, at 312 (1993 Supp.). The United States Supreme Court upheld the imposition of New Mexico taxes in a virtually identical factual scenario in *United States v. New Mexico*, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982). Two of the corporations involved in that case performed various tasks under contract with the United States Department of Energy in the management, maintenance, construction, and repair of the very same Los Alamos National Laboratory where the present plaintiffs were employed prior to their retirement. As in the present case, the contracts provided that contractors would pay employees directly from special segregated bank accounts in which title to the funds remained in the federal government. The United States argued, inter alia, that the salaries paid by its contractors should not be subjected to New Mexico tax because the contractors were agents of the federal government. Speaking for a unanimous court, Justice Blackmun framed the issue as "whether the contractors can realistically be considered entities independent of the United States." *Id.* at 738, 102 S.Ct. at 1385. The Court recognized that the current trend is not to limit states' taxation authority where there is no direct burden upon the federal government and examined the details of the federal relationship with the contractors providing the services at the Los Alamos National Laboratory. The Court concluded "[t]he congruence of professional interests between the contractors and the Federal Government is not complete[.]" *Id.* at 740, 102 S.Ct. at 1386. The Court therefore upheld the imposition of New Mexico's gross receipts tax upon the salaries paid by the federal contractors to their employees working at the Los Alamos National Laboratory.

■ Plaintiffs, however, argue that the New Mexico tax discriminates against them based on their relation to the federal government. As *United States v. New Mexico* illustrates, Plaintiffs do not receive their retirement payments from the federal government for purposes of constitutional tax immunity analysis. The discriminatory impact of which they complain is therefore not directed toward the federal government and is not prohibited.

Once again, tracing the ITI doctrine to its roots makes this point abundantly clear. In *McCulloch*, Chief Justice Marshall examined the rationale behind prohibiting states from imposing discriminatory taxes upon federal instrumentalities:

The people of a state, therefore, give to their government a right of taxing themselves and their property, and as the exi-

gencies of government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influence of the constituent over their representative, to guard them against its abuse. But the means employed by the government of the Union have no such security, nor is the right of a state to tax them sustained by the same theory.

17 U.S. at 428.

 In the present case, Plaintiffs are New Mexico residents and with regard to state taxation may rest "confidently on the interest of the legislator, and on the influence of the constituent[s] over their representative, to guard against its abuse." *Id.; see also Brown v. Mierke,* No. 90–C–3341, 1994 WL 96685, at *5 (W.Va. Mar. 24, 1994) (protection of the politically weak is a cornerstone of ITI doctrine). In this regard, Plaintiffs are no different than the vast majority of other New Mexico citizens whose retirement incomes are also subject to New Mexico income tax. The fact that the State has chosen to exempt from state tax one limited class of state retirees does not mean Plaintiffs are being illegally discriminated against. *See Brown,* 1994 WL 96685, at *1; *Schnorbus v. Director of Revenue,* 790 S.W.2d 241, 242 (Mo.1990) (en banc), *cert. denied,* 498 U.S. 1027, 111 S.Ct. 679, 112 L.Ed.2d 671 (1991). As Justice Stevens said in his concurrence in *Barker v. Kansas,* "[a] state tax burden that is shared equally by federal retirees and the vast majority of the State's citizens does not discriminate against those retirees." 503 U.S. 594, ——, 112 S.Ct. 1619, 1626, 118 L.Ed.2d 243 (1992); *see also,* Richardson, *supra,* at 436 (state tax violates ITI only if purpose or effect of discrimination is to shift operating costs to the other government).

For these reasons, we hold that the trial court erred by concluding that the tax violated the ITI doctrine based on Plaintiffs' dealings with the federal government.

II. *Tax Discrimination Based on Dealings With the State of California*

The trial court also based its grant of summary judgment on the fact that it found that the tax operated to discriminate against those who deal with the State of California in violation of the ITI doctrine. There is no doubt that the tax discriminates against employees who are residents of New Mexico, but whose source of income is from another state's educational institution. However, we agree with the Department that the ITI doctrine has no applicability in the context of state-to-state relations.

 Our decision rests on the fact that the ITI doctrine is based on the need to protect each sovereign's government operations from undue interference by another sovereign. *See Davis,* 489 U.S. at 814, 109 S.Ct. at 1507. The federal government has the ability to tax activities within New Mexico, and can thereby affect New Mexico's ability to carry out its governmental functions. Similarly, in limited circumstances, New Mexico can impose taxes on the federal government and affect its governmental functions. Therefore, the need for each sovereign to protect itself from undue interference is clearly present in the case of the overlapping sovereignty of the state and federal governments, and the ITI doctrine is applicable. Hartman, *supra,* § 6:19, at 333–39.

 The power to tax is, however, only coextensive with a sovereign's boundaries. *McCulloch,* 17 U.S. at 428–29. Unlike the federal government whose sovereignty overlaps that of all of the states, California does not have the ability to affect governmental functions in New Mexico by imposing taxes. Similarly, New Mexico has no ability to affect California's governmental functions by reaching out to tax those functions or employees exerting those functions in California. Thus, the need for each state to protect itself from undue interference from injurious taxes by the other is absent. Consequently, there is no basis on which to apply the ITI doctrine. *Cf.* Kenda K. Tomes, *State Taxation of Puerto Rican Obligations: An Interest(ing) Question,* 66 Chi.–Kent L.Rev. 903, 938 (1990) (the Constitution does not prohibit a state from taxing the income received by its residents from bonds issued by another state).

**30**

We find support for this result not only in the philosophical underpinnings of the ITI doctrine but also in the fact that no federal case has applied intergovernmental tax immunity between two states. In fact, all federal cases cited by Plaintiffs in support of their argument dealt with intergovernmental tax immunity between the federal government and the states. Plaintiffs' only support comes from the state case of *Pledger v. Bosnick*, 306 Ark. 45, 811 S.W.2d 286 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 3034, 125 L.Ed.2d 721 (1993). *Pledger* held that a statutory exemption from Arkansas income tax for the retirement income received by Arkansas state retirees unconstitutionally discriminated against other Arkansas residents who received retirement income from employment with United States civil service agencies, branches of the United States armed forces, and other states' agencies and political subdivisions. As such, *Pledger* confronted the same question which faces us today.

In concluding that the ITI doctrine applied between the states, the *Pledger* court relied on *Davis* and *Phillips Chemical Co. v. Dumas Independent School District*, 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960). However, we believe *Pledger*'s reliance on these cases is misplaced. In both *Davis* and *Phillips* the Court dealt only with the application of the ITI doctrine to overlapping sovereigns and did not apply the ITI doctrine to taxation of one state by another state. We see no other analysis in *Pledger* which supports application of the ITI doctrine in this context. Consequently, we do not find *Pledger* persuasive.

For the reasons stated, we hold that the ITI doctrine is not applicable.

### CONCLUSION

We reverse the trial court's summary judgment granted in favor of Plaintiffs as well as the trial court's award of costs to Plaintiffs.

**IT IS SO ORDERED.**

PICKARD and BLACK, JJ., concur.