**154**

John A. and Frances W. HARMON,
Appellants,

v.

DIRECTOR OF REVENUE, STATE
OF MISSOURI, Respondent.

No. 77141.

Supreme Court of Missouri,
En Banc.

Feb. 21, 1995.

John A. Harmon, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gretchen Garrison, Charles Hatfield, Asst. Attys. Gen. Jefferson City, for respondent.

LIMBAUGH, Judge.

Appellants, John A. and Frances W. Harmon, seek a refund of income taxes they paid on retirement benefits received from the State of Illinois in 1989. The Director of Revenue ("Director") and, thereafter, the Administrative Hearing Commission ("AHC") denied the claim. The Harmons then petitioned for review in this Court. Jurisdiction is based on the Harmons' challenge to the validity of the revenue laws of this state. *Mo. Const. art. V, § 3.* Appellate review is governed by *§ 621.193, RSMo 1994,* which states that "the decision of the Administrative Hearing Commission shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record...." The decision of the AHC is affirmed.[1]

I.

In 1975, after Mr. Harmon retired from a career as a public school teacher in Illinois,

---

1. On June 1, 1989, the Harmons filed a claim for refunds respecting the tax years 1986, 1987 and 1988. This prior claim, like the one here, sought refunds of taxes paid on Illinois pension income. The Director, and thereafter, the AHC, denied the claim. The Harmons did not appeal that prior decision. Therefore, contrary to assertions in the Harmons' brief, the only issue in this case is the refund claim for the 1989 tax year.

he and his wife moved to Missouri. By virtue of his former employment, Mr. Harmon receives a pension from the State of Illinois. That pension income was included as adjusted gross income on the Harmons' 1989 joint federal and state tax returns. In 1993, the Harmons filed an amended 1989 Missouri income tax return that showed a reduction of $10,512.00 in Missouri adjusted gross income from their original return. The Harmons then applied to the Director for a refund of $437.00, the tax paid on that income.

The reduction in income on the amended tax return represents Mr. Harmon's Illinois pension income for the first six months of 1989. The Harmons do not claim a refund for the last six months of 1989 because, effective July 1, 1989, § 143.124, RSMo, permitted them to take a deduction for out-of-state pension income received after that date.[2] Prior to July 1, 1989, § 169.587, RSMo 1986, provided an exemption from income tax for pension income of former *Missouri* teachers and school employees. The exemption, however, did not apply to pension income from out-of-state sources.

The Harmons argued before the Director, and in turn before the AHC, that prior to July 1, 1989, Missouri's taxation scheme operated to discriminate against Missouri residents whose source of pension income was from another state, in violation of the intergovernmental tax immunity doctrine. After an evidentiary hearing, the AHC denied the claim for the reason that Missouri income tax law provided no exemption or deduction for Illinois public employee pension income during the first six months of 1989. Furthermore, the AHC concluded that it had no authority to pass on the validity of Missouri's revenue laws. This petition for review followed.

**2.** *Section 143.124* allows deductions in specified amounts for "annuity, pension or retirement allowance provided by the United States, this state, *any other state* or any political subdivision or agency or institution of this or any other state." (Emphasis added.)

**3.** For a discussion of the evolution of the intergovernmental tax immunity doctrine beginning

## II.

■ Intergovernmental tax immunity prohibits taxes that are imposed directly on one sovereign by another sovereign or that discriminate against a sovereign or those with whom it deals. *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 811, 109 S.Ct. 1500, 1505, 103 L.Ed.2d 891 (1989). The doctrine had its genesis in the venerable case of *McCulloch v. Maryland*, 4 Wheat. 316, 4 L.Ed. 579 (1819). The United States Supreme Court, citing the Supremacy Clause, held that the State of Maryland could not impose a discriminatory tax on the Bank of the United States as it was an instrumentality of the federal government used to carry into effect the government's delegated powers. *Id.* at 425–37, 4 L.Ed. 579. The Supreme Court stated that taxation by the State would unconstitutionally interfere with the exercise of those powers. *Id.* Later cases recognize that the basis of the doctrine is the need to protect one sovereign's governmental operations from undue interference by another sovereign. *Davis*, 489 U.S. at 814, 109 S.Ct. at 1506.[3]

■ Following this rationale, the Supreme Court, in *Davis*, held that a state's taxing scheme violates the doctrine by favoring state retirees over federal retirees. *Id.* at 817, 109 S.Ct. at 1508.[4] This Court followed *Davis* in *Hackman v. Taylor*, 771 S.W.2d 77, 79–80 (Mo. banc 1989), *cert. denied*, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990), by holding that Missouri statutes granting income tax exemptions for state retirees, but not federal retirees, were invalid. The Harmons apparently seek to extend the doctrine of intergovernmental tax immunity to state-to-state relations. In that regard, they contend that, like the taxpayers in *Hackman*, they are entitled to a refund for "income taxes collected illegally under a taxation scheme which violates principles of intergovernmental tax immunity." *Id.* at 80–81. We

with *McCulloch, see Davis*, 489 U.S. at 811–12, 109 S.Ct. at 1505–06.

**4.** In *Davis*, the Supreme Court dealt not only with the constitutional doctrine of intergovernmental tax immunity but also with 42 U.S.C. § 111. That section deals only with the taxation of officers and employees of the United States. *Davis*, 489 U.S. at 808–14, 109 S.Ct. at 1504–06.

conclude, however, that the doctrine of inter-governmental tax immunity, as articulated in *Davis* and *Hackman*, concerns itself with, and is limited to, the relationship between the states and the federal government.

Our research discloses only two cases that address whether the intergovernmental tax immunity doctrine applies to state-to-state relations as opposed to federal-state relations. The two cases, *Pledger v. Bosnick*, 811 S.W.2d 286 (Ark.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 3034, 125 L.Ed.2d 721 (1993), and *Alarid v. Secretary, Dept. of Tax Rev.,* 118 N.M. 23, 878 P.2d 341, 348 (App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995), reach opposite conclusions. In *Pledger,* the Arkansas Supreme Court miscited *Davis* for the proposition that the doctrine applies among the states. *Pledger,* 811 S.W.2d at 291. In fact, *Davis* did not address that issue. *Davis,* 489 U.S. at 806–07, 814, 109 S.Ct. at 1502–03, 1506. On the other hand, the *Alarid* court, after tracing the history of the doctrine through the *Davis* decision, concluded, as we do, that the doctrine has no applicability in the context of state-to-state relations. *Alarid,* 878 P.2d at 344–45, 347–48.

■ Because the doctrine is a limitation on one sovereign's right to interfere with the functions of another by its power to tax, it is only applicable in cases of overlapping sovereignty. *Alarid,* 878 P.2d at 347. Undeniably, the power to tax is coextensive with a sovereign's boundaries. *McCulloch,* 4 Wheat. at 428–29, 4 L.Ed. 579. The federal government, whose sovereignty overlaps that of all the states, has the ability to affect governmental functions of all the states by imposing taxes. Unlike the federal government, however, the states do not have the ability to affect governmental functions of other states by imposing taxes on those states or its citizens. *Alarid,* 878 P.2d at 347. Therefore, there is no need for each state to protect itself from undue interference from taxation by another state, and thus, there is no basis to extend the doctrine.

### III.

We hold that the decision of the AHC is authorized by law and supported by compe-tent and substantial evidence upon the whole record. The decision is affirmed.

COVINGTON, C.J., HOLSTEIN, THOMAS, PRICE and ROBERTSON, JJ., and TURNAGE, Special Judge, concur.

BENTON, J., not sitting.